Mason *v.* Payne.

---

Walker.
1w459
74    684

1w459
112    289

1w    459
128    432

JASPER MASON *v.* RODNEY C. PAYNE, THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS AND ME-CHANICS' BANK OF MICHIGAN, AND JACOB BEESON.

Where a part of mortgaged premises has been aliened by the mortgagor, subsequent to the mortgage, the rule in equity, on a foreclosure and sale, is to require that part of the premises in which the mortgagor has not parted with his equity of redemption, to be first sold; and then, if necessary, that which has been aliened: and, where the latter is in possession of different vendees, in the inverse order of alienation.

But where a part of mortgaged premises is conveyed by the mortgagor *subject to the payment of the whole of the mortgage*, that part as between the vendor and vendee constitutes the primary fund for its payment.

A vendee is chargeable with notice of the contents of a deed to his grantor, through which he claims title.

Where a lot of land was conveyed by complainant, subject to the payment of a mortgage on certain other lands, and proceedings were had in chancery to foreclose the mortgage, and the decree became the property of one of the defendants who also purchased the lot on which payment was charged, *it was held*, that such purchase amounted to a satisfaction of the mortgage to the value of the lot so purchased.

Mason *v.* Payne.

An application by a party or privy to a proceeding in this Court, to stay such proceeding, must be directly to the Court itself, in the matter of the suit or proceeding, for an order to that effect; and an officer out of Court has no authority to allow an injunction for that purpose. But where the case was such that an order would have been granted, and the objection was not taken on the argument, the injunction was allowed to stand for such order.

MOTION to dissolve injunction on bill and answer.

Jacob Beeson, being the owner of five several lots of land,—say Nos. 1, 2, 3, 4 and 5,—in June, 1834, mortgaged them to George Kimmel for $1,000, payable in five years, with interest; which mortgage was duly recorded. In May, 1836, Beeson sold lots Nos. 1, 2 and 4, to the complainant, Jasper Mason, subject to "*the payment of the whole and entire amount*" of the Kimmel mortgage; and the latter covenanted to pay the mortgage, and to indemnify and save harmless Beeson, his heirs, executors, administrators, and assigns, from any claim or demand on account of it. In August, 1836, Mason sold and conveyed, by warranty deed, lots one and four to Stanton and Hamilton, who purchased without notice, as the answer states, that the conveyance from Beeson to Mason, their grantor, was subject to the Kimmel mortgage. In October, 1840, Payne purchased these lots, viz. one and four, in trust for the bank, as the bill states, and the trust is not denied by the answer. In December, 1837, Mason, being the owner of lot fifty-eight in the village of Niles, mortgaged it to Stanton and Hamilton, and one Walker, who was at that time part owner with them of lots one and four, to indemnify them against the Kimmel mortgage. This mortgage was recorded about the time it was executed. Mason afterwards, in March, 1838, sold lot fifty-eight to Thomas Fitzgerald, subject to the payment of the Kimmel mortgage, which was thereby "*charged upon the said lot of land.*" In August, 1841, Fitzgerald sold it to the bank, subject to the mortgage from Mason to Stanton, Ha-

milton and Walker, and a mortgage executed by Fitzgerald to Cogswell K. Green, which mortgages were to be "and remain as a lien on said premises, according to the true intent thereof, until fully paid and satisfied by the said party of the second part, their successors in office or assigns." On June 27th, 1840, Kimmel obtained a decree to sell the lots mortgaged to him, unless they were redeemed within a given time, in payment of his mortgage, which decree was assigned by him on December 6th, 1843, to John F. Porter, and afterwards by Porter to the bank. The complainant, who was still the owner of lot No. 2, insisted the bank, as the purchaser of lot fifty-eight from Fitzgerald, was bound to pay the Kimmel mortgage, and that, therefore, the assignment of the decree by Porter to the bank, was, in equity, a satisfaction of the decree; and prayed the bank might be decreed to acknowledge satisfaction of the decree.

*C. Dana*, in support of the motion.

*H. N. Walker*, contra.

The Chancellor. The effect of the conveyance from Beeson to Mason, of lots one, two and four, subject to the payment of the whole of the Kimmel mortgage, as between them, was to make these lots the primary fund for the payment of that mortgage; *Cox* v. *Wheeler*, 7 *Paige R.* 248; *Jumel* v. *Jumel, Id.* 591; and the covenant of indemnity was to secure Beeson against any deficiency of the fund.

Where a part of mortgaged premises has been aliened by the mortgagor, subsequent to the mortgage, the rule in equity, on a foreclosure and sale, is to require that part of the premises in which the mortgagor has not parted with his equity of redemption, to be first sold; and then, if ne-

cessary, that which has been aliened; and, where the latter is in possession of different vendees, in the inverse order of alienation. This rule, however, is inapplicable to the conveyance from Beeson to Mason, as it was made subject to the payment of the Kimmel mortgage, which raised an equity in favor of Beeson to have the lots conveyed by him to Mason first applied in payment of that mortgage, if Mason failed to pay it in pursuance of his covenant. The answer denies Stanton and Hamilton had notice of this equity, when they purchased of Mason. If they had not actual notice, they were chargeable with constructive notice. They could not make out their title to lots one and four, without claiming through Beeson's deed to Mason, their grantor; and they were, therefore, chargeable with notice of the contents of that conveyance. *Jumel* v. *Jumel,* 7 *Paige R.* 591; *Harris* v. *Fly, Id.* 421; *Moore* v. *Bennett,* 2 *Ch. Cas.* 246. This conveyance, as I have already stated, as between Beeson and Mason, in equity, charged lots one, two and four, with the payment of the whole of the Kimmel mortgage; so that neither Mason, nor his privies in estate, who are chargeable with notice of its contents, have a right, as against Beeson, to have the Kimmel mortgage paid by a sale of that part of the mortgaged premises not conveyed by Beeson to Mason.

But, as the conveyance from Mason to Stanton and Hamilton was not made subject to the Kimmel mortgage, they would have a right, as against Mason, if they were still the owners of lots one and four, to have lot No. 2, still owned by Mason, first sold to satisfy the decree; and the bank has the same right, unless that right has been displaced by a new equity, between the bank and Mason, growing out of the purchases of lot fifty-eight and the decree by the bank.

Mason *v.* Payne.

Lot fifty-eight is no part of the premises mortgaged by Beeson to Kimmel, but was mortgaged by Mason to Stanton, Hamilton and Walker, when they were owners of lots one and four, to indemnify them against the Kimmel mortgage. Mason, to whom it belonged to pay that mortgage, afterwards sold lot fifty-eight to Fitzgerald, "*subject to the payment of the whole of Kimmel's mortgage*," describing the mortgage particularly in the conveyance. This, as between Fitzgerald and Mason, made lot fifty-eight a fund for the payment of Kimmel's mortgage. It was no longer a mere security of indemnity to Stanton, Hamilton and Walker and their grantees, but was charged with the payment of that mortgage. Now, as between a mortgagor and his vendee subject to the mortgage, the mortgaged premises are a primary fund for the payment of the mortgage debt; so, in the present case, as between Mason and Fitzgerald, or his vendee the bank, lot fifty-eight is the primary fund for the payment of the Kimmel mortgage. The bank purchased subject to the Stanton, Hamilton and Walker mortgage, and another mortgage to Green; and, under the rule above stated, the bank was chargeable with notice of the contents of Mason's deed to Fitzgerald, when it purchased of him. And, as the bank owns both lot fifty-eight and the decree, the latter must be considered as satisfied, if the property is worth, and will sell for enough to pay what is due on the decree; otherwise, it is a satisfaction only so far as it will go towards paying the decree.

The complainant's case was not one proper for an injunction, but for an order staying proceedings in the foreclosure suit, which might have been obtained on application by petition to the Court. In the language of Chancellor Walworth, "an application, by a party or privy to a proceeding in this Court, to stay such proceeding, must

be directly to the Court itself, for an order to that effect;" and an officer out of Court has "no authority to allow an injunction for that purpose." *Ellsworth* v. *Cook*, 8 *Paige R.* 643; 2 *Paige R.* 26. This objection was not taken on the argument; and, an answer having been put in, and the case being one in which an order would have been granted, I shall let the injunction stand in the place of an order.

Motion denied.